UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| IN RE APPLICATION OF USA PURSUANT COMMISSIONER'S APPOINTMENT FOR FRAUD INVESTIGATION | ) ) ) ) ) ) ML No: 22-863 |

*Reference:*   *DOJ Ref. # 182-75733*

APPLICATION OF THE UNITED STATES FOR AN ORDER
FOR A COMMISSIONER'S APPOINTMENT PURSUANT TO 18 U.S.C. § 3512

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs, Criminal Division, U.S. Department of Justice (or a substitute or successor subsequently designated by the Office of International Affairs), as a commissioner to collect evidence and to take such other action as is necessary to execute this and any subsequent, supplemental requests for assistance with the above-captioned criminal matter from Lithuania.  In support of this application, the United States asserts:

RELEVANT FACTS

1.   The Central Authority, the Prosecutor General's Office of the Republic of Lithuania, submitted a request for assistance (the Request) to the United States, pursuant to the Treaty Between the United States of America and the Republic of Lithuania on Mutual Legal Assistance in Criminal Matters, U.S.-Lith., Jan. 16, 1998, S. TREATY DOC. NO. 105-41 (1998) the Treaty.

2. As stated in the Request, the Special Tasks Board of Financial Crime Investigation Service in Lithuania is investigating Corporation A, for: (1) fraud; (2) appropriation of property; (3) incorrect reporting of income, profits, and assets; (4) fraudulent accounting; and (5) forgery of documents, which occurred in or about between August 2017 and December 2017, in violation of the criminal law of Lithuania, specifically, Articles 183, 220, 222, and 300 of the Lithuanian Criminal Code. Under the Treaty, the United States is obligated to assist in response to the Request.

3. According to Lithuanian authorities, Corporation A, a Lithuanian business, provides "crypto-mining" services and equipment to other companies and persons (customers). Corporation A typically contracts with customers and agrees to purchase computers which are then used for cryptocurrency mining. Under the contract, the customers reimburse Corporation A for the computers which are used for the customers' crypto-mining needs.

4. After a routine review of Corporation A's tax records revealed irregularities, Lithuanian authorities initiated an investigation into the alleged fraudulent and tax evasion conduct. Lithuanian authorities determined that Corporation A under reported income on its tax returns by not disclosing all of the revenue from some customers for cryptocurrency mining services and attempting to conceal the transactions in their accounting records.

5. Between September 26, 2018, and September 27, 2018, Lithuanian authorities conducted a search at Corporation A's headquarters in Lithuania. Based on a review of Corporation A's business records, specifically for fiscal years 2017-2018, Lithuanian authorities determined that seven (7) of Corporation A's customers (victims) were listed in Corporation A's business records. However, the victims never contracted with Corporation A for cryptocurrency mining services and equipment. Instead, Lithuanian authorities determined that the victims actually contracted with an individual (Subject-1), a Lithuanian national, and a United States company (Trade Company 1). Subject-1 is a shareholder at Trade Company 1, and Subject-1

instructed the victims to pay for the services and equipment by transferring funds to Trade Company 1's bank account, account number XXXX4273, at BMO Harris Bank, N.A. (BMO Harris Bank) in the United States. The victims collectively paid a total of approximately 72,450 USD for computer equipment and crypto-mining services. The victims received crypto-mining services. However, neither Subject-1, Trade Company 1, nor Corporation A purchased the promised equipment to provide crypto-mining services. Subject-1 and Trade Company 1 fraudulently charged the victims fees for reimbursement of computer equipment that they never purchased for the victims. These fraudulent transactions then improperly appeared in the business records and tax filings of Corporation A. The victims report that neither Subject-1, Trade Company 1, nor Corporation A have refunded their payments.

6. To further the investigation, Lithuanian authorities have asked U.S. authorities to: (a) obtain banking records from BMO Harris Bank pertaining to account number XXXX4273 and (b) obtain business records related to the aforementioned transactions from and interview a representative at Trade Company 1.

## LEGAL BACKGROUND

7. A treaty[1] constitutes the law of the land. U.S. Const. art. VI, cl. 2. The provisions of a treaty have equal footing with acts of Congress and are binding on the courts. See Asakura v. City of Seattle, 265 U.S. 332, 341 (1924); United States v. The Peggy, 5 U.S. 103 (1801); United States v. Emuegbunam, 268 F.3d 377, 389 (6th Cir. 2001). The provisions of a treaty should be construed liberally "to give effect to the purpose which animates it." United States v. Stuart, 489 U.S. 353 (386) (1989) (internal quotations marks omitted). To the extent that the provisions of a treaty are inconsistent with a preexisting statutory provision, the treaty supersedes the statute. Zschernig v. Miller, 389 U.S. 429, 440-41 (1968).

---

[1] The term "Treaty" used herein encompasses bilateral treaties, multilateral conventions, instruments, and protocols.

8.      The United States and Lithuania entered into the Treaty to promote more effective judicial cooperation and assistance between the parties in criminal matters.  See Treaty pmbl. The Treaty obligates each party, upon request, to provide assistance to the other in criminal investigations, prosecutions, and related proceedings, including assistance in serving documents, obtaining testimony, statements, and records, and executing searches and seizures.  Article 1.  In addition, the Treaty, like 18 U.S.C. § 3512, authorizes federal courts to use compulsory measures to further the execution of such requests.  Article 8.  ("testimony or evidence. . .requested. . . .pursuant to this Treaty. . . shall be compelled if necessary.").

9.      When executing a treaty or non-treaty request for assistance from a foreign authority, an attorney for the government may file an application to obtain any requisite court orders under 18 U.S.C. § 3512.  This section authorizes a federal court to issue such orders and provides in pertinent part:

> Upon application, duly authorized by an appropriate official of the Department of Justice, of an Attorney for the Government, a Federal judge may issue such orders as may be necessary to execute a request from a foreign authority for assistance in the investigation or prosecution of criminal offenses, or in proceedings related to the prosecution of criminal offenses, including proceedings regarding forfeiture, sentencing, and restitution.
>
> *           *           *
>
> [A]n application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia.
>
> *           *           *
>
> The term "foreign authority" means a foreign judicial authority, a foreign authority responsible for the investigation or prosecution of criminal offenses or for proceedings related to the prosecution of criminal offenses, or an authority designated as a competent authority or central authority for the purpose of making requests for assistance pursuant to an agreement or treaty with the United States regarding assistance in criminal matters.

18 U.S.C. § 3512(a)(1), (c)(3), (h)(2).

10.     Congress enacted this section to make it "easier for the United States to respond to [foreign] requests by allowing them to be centralized and by putting the process for handling

them within a clear statutory scheme." 155 Cong. Rec. 6,810 (2009) (statement of Sen. Whitehouse); Foreign Evidence Request Efficiency Act of 2009, Pub. L. No. 111-79, 123 Stat. 2086.[2]  This section provides clear authority for the federal courts, upon application duly authorized by an appropriate official of the Department of Justice, to issue orders that are necessary to execute a foreign request.

11.   An application is duly authorized by an appropriate official of the Department of Justice when the Office of International Affairs[3] has reviewed and authorized the request, and executes the request itself or delegates execution to another attorney for the government.[4]  Upon such a duly authorized application, Section 3512 authorizes a federal judge[5] to issue "such orders as may be necessary to execute [the] request," including:  (1) search warrants under Fed. R. Crim. P. 41; (2) orders for electronic records under 18 U.S.C. § 2703; (3) orders for pen registers or trap and trace devices under 18 U.S.C. § 3123; and (4) orders appointing a person to direct the taking of testimony or statements and/or the production of documents or other things.  See 18 U.S.C. § 3512(a)(1)--(b)(1).  In addition, a federal judge may order any necessary procedures to

---

[2] Prior to the enactment of 18 U.S.C. § 3512, the United States routinely utilized the procedures authorized by 28 U.S.C. § 1782 (the "commissioner" process) to execute requests from foreign authorities.  See In re Request from the United Kingdom, 685 F.3d 1, 11 (1st Cir. 2012) (18 U.S.C. § 3512 provides a more streamlined process than 28 U.S.C. § 1782, the statute under which foreign requests were executed prior to enactment of section 3512); see also Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247-49 (2004) (describing history of Section 1782).  When enacting Section 3512, Congress anticipated that improved U.S. handling of foreign requests would ensure reciprocity in response to U.S. requests for assistance in its criminal investigations.  See, e.g., 155 Cong. Rec. 10,093 (2009) (statement of Rep. Schiff).

[3] The Attorney General, through regulations and Department of Justice directives, delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  See 28 C.F.R. 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

[4] "Section 3512 can be invoked only when authorized by OIA. . . .  Such authorization occurs when an attorney for the government, or his or her office, receives the referral of the request for execution from OIA."  Memorandum from the Deputy Attorney General to Department of Justice Components (May 16, 2011) (on file with the Office of International Affairs).

[5] The term "federal judge" includes a magistrate judge.  See 18 U.S.C. § 3512(h)(1); Fed. R. Crim. P. 1(b)(3)(B) (including a magistrate judge in the definition of federal judge).

facilitate the execution of the request, including any procedures requested by the foreign authority to facilitate its use of the evidence. 18 U.S.C. § 3512(a)(1).

12. Section 3512 also authorizes any person appointed to direct the taking of testimony or statements and/or the production of documents. The appointed person has authority to: (1) issue an order requiring a person to appear and/or produce documents or other things; (2) administer any necessary oaths; and (3) take testimony or statements and receive documents or other things. 18 U.S.C. § 3512(b)(2). In ordering a person to appear and/or produce documents or other things, the person appointed, commonly referred to as the "commissioner," typically uses a subpoena entitled "Commissioner's Subpoena." Any such subpoena may be served or executed anywhere in the United States. 18 U.S.C. § 3512(f).

## REQUEST FOR ORDER

13. The Office of International Affairs has reviewed and authorized the Request and is executing the Request itself. Consequently, this application for an Order appointing the undersigned attorney as a commissioner to collect evidence and to take such other action as is necessary to execute the Request has been "duly authorized" within the meaning of Section 3512. In addition, the Request was submitted by an appropriate "foreign authority," the Prosecutor General's Office of the Republic of Lithuania and seeks assistance in the investigation of: (1) fraud; (2) appropriation of property; (3) incorrect reporting of income, profits, and assets; (4) fraudulent accounting; and (5) forgery of documents in Lithuania. The requested Order is necessary to execute the Request, and the assistance requested, *i.e.*, the production of business and bank records and witness interviews, falls squarely within that contemplated by Section 3512 and the Treaty. Finally, this application was properly filed in the District of Columbia.

14. This application is being made *ex parte*, consistent with U.S. practice in its domestic criminal matters.

15. When executing a foreign request for assistance in a criminal matter, both Section 3512 and the Treaty authorize the use of compulsory process comparable to that used in domestic criminal investigations and/or prosecutions. Because subpoenas utilized in U.S. criminal proceedings (i.e., grand jury and criminal trial subpoenas) are issued without notice to any person other than the recipient (i.e., no notice to targets or defendants), orders and commissioner subpoenas issued in execution of a foreign request pursuant to Section 3512 and the applicable treaty likewise should require no notice other than to the recipients. This is true even if the Requesting State, as here, seeks financial records, because the Right to Financial Privacy Act, 12 U.S.C. §§ 3401 et seq., including its notice provisions, does not apply to the execution of foreign requests for legal assistance. Young v. U.S. Dept. of Justice, 882 F.2d 633, 639 (2d Cir. 1989), cert. denied, 493 U.S. 1072 (1990); In re Letters of Request from the Supreme Court of Hong Kong, 821 F. Supp. 204, 211 (S.D.N.Y. 1993); In re Letter of Request for Judicial Assistance from the Tribunal Civil de Port-Au-Prince, Republic of Haiti, 669 F. Supp. 403, 407 (S.D. Fla. 1987). Accordingly, this Court should authorize a commissioner to collect the evidence requested without notice to any person(s) or entity(ies) other than the recipient(s) of any given commissioner subpoena.

16. Therefore, the United States respectfully requests that this Court issue the attached Order, pursuant to 18 U.S.C. § 3512, appointing the undersigned attorney, Angela S. George, Trial Attorney, Office of International Affairs (or a substitute or successor subsequently designated by the Office of International Affairs) as a commissioner, authorizing the undersigned to take the actions necessary, including the issuance of commissioner's subpoenas, as needed, to collect the evidence necessary to execute any pending request for assistance and any subsequent, supplemental requests in connection with the same matter, in a manner consistent with the

intended use of the evidence.

                                        Respectfully submitted,

                                        VAUGHN A. ARY
                                        DIRECTOR
                                        OFFICE OF INTERNATIONAL AFFAIRS
                                        OK Bar Number 12199

By:       _____
                                        Angela S. George
                                        Trial Attorney
                                        D.C. Bar Number 470567
                                        Office of International Affairs
                                        Criminal Division, Department of Justice
                                        1301 New York Avenue, N.W.
                                        Washington, D.C. 20530
                                        (202) 514-4653
                                        Angela.George@usdoj.gov